IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

|  |  |
|---|---|
| Kenneth W. Cambron, | Civ. No. 11-00326 HG-KSC |
| Plaintiff, | |
| vs. | |
| Starwood Vacation Ownership,<br>Inc.; and Starwood Hotels<br>Worldwide, Inc., | |
| Defendants. | |

**ORDER GRANTING DEFENDANT STARWOOD VACATION OWNERSHIP, INC.'S
MOTION TO DISMISS THE AMENDED COMPLAINT FILED JANUARY 25, 2013
WITH PREJUDICE (ECF No. 69)**

Plaintiff Kenneth W. Cambron has brought suit against his former employer. He claims wrongful termination in violation of public policy, breach of Hawaii's whistleblower statute, and fraud.

Defendant moves to dismiss Plaintiff's Amended Complaint, filed on January 25, 2013.

On April 1, 2013, the Court held a hearing on the matter. Defendant's Motion to Dismiss the Amended Complaint (ECF No. 69) is **GRANTED WITH PREJUDICE.**

## PROCEDURAL HISTORY

On October 25, 2010, Plaintiff Kenneth W. Cambron, with the assistance of Counsel, filed a Complaint in the Circuit Court of the Second Circuit for the State of Hawaii against Starwood Vacation Ownership, Inc. (Notice of Removal Ex. A, ECF No. 1.)

On November 9, 2010, Plaintiff's Counsel withdrew. Plaintiff now appears pro se.

On April 21, 2011, Plaintiff served the Complaint on Defendant Starwood Vacation Ownership, Inc.

On May 9, 2011, Defendant Starwood Vacation Ownership, Inc. filed an Answer. (Notice of Removal Ex. B, ECF No. 1.)

On May 23, 2011, Defendant filed a Notice of Removal, removing the action to the Federal District Court. (ECF No. 1.)

On August 28, 2011, Defendant filed a Motion for Judgment on the Pleadings. (ECF No. 51.)

On October 29, 2012, a hearing was held on the Motion for Judgment on the Pleadings. At the hearing, Plaintiff requested leave to file an Amended Complaint. (ECF No. 62.)

On November 29, 2012, the Court issued a Minute Order granting Defendant's Motion for Judgment on the Pleadings. The Minute Order also granted Plaintiff leave to file an Amended Complaint. (ECF No. 63.)

On December 18, 2012, the Court issued a Written Order, providing the legal bases for the granting of the Defendant's Motion for Judgment on the Pleadings on November 29, 2012 and the requirements for the Amended Complaint. (ECF No. 64.)

On January 25, 2013, Plaintiff filed an Amended Complaint, naming Starwood Vacation Ownership, Inc. and Starwood Hotels Worldwide, Inc. as Defendants. (ECF No. 66.) The Amended Complaint refers to Defendant Starwood Vacation Ownership, Inc. as "Starwood Westin Vacation Ownership, Inc." at various points. The Order uses the "Starwood Vacation Ownership, Inc." name. Defendant Starwood Hotels Worldwide, Inc. is the parent company for Starwood Vacation Ownership, Inc. There has been no filing indicating that Defendant Starwood Hotels Worldwide, Inc. has been served.

On February 14, 2013, Defendant Starwood Vacation Ownership, Inc. filed a Motion to Dismiss the Amended Complaint. (ECF No. 69.)

On March 4, 2013, Plaintiff filed an Opposition. (ECF No. 73.)

On April 1, 2013, the Court held a hearing on the Motion to Dismiss. The Court granted the Motion, dismissing the action with prejudice, with a written Order to follow. (ECF No. 74.)


## BACKGROUND


In the Amended Complaint, Plaintiff Kenneth W. Cambron alleges that Defendant Starwood Vacation Ownership, Inc. is liable for

wrongful termination of his employment in violation of public policy (Count I), violation of the Hawaii Whistleblowers' Protection Act (Count II), and fraud and conspiracy to defraud to prevent a finding of liability (Count III). (Am. Compl., Jan. 25, 2013, ECF No. 66.) The dispute arises from an alleged assault against Cambron, committed by his former supervisor at Starwood Vacation Ownership, Inc., David DiBerardino.

Defendant Starwood Vacation Ownership, Inc. ("Starwood") is a company that develops and sells time-shares. Cambron first worked at Starwood on Maui as a vacation time-share salesperson from April 2003 until June 2005. He was directly supervised by David DiBerardino during that time. (Am. Compl., Factual Allegations at ¶¶ 2-3.)

In August 2006, Cambron resumed working for Starwood on Maui. DiBerardino was working at a different Starwood office, in a higher-level position, at that time. (Id. at ¶ 4.)

In January 2009, DiBerardino returned to the Maui office, where Cambron was working. (Id. at ¶ 5.)

Soon after DiBerardino's return to the Maui office, Cambron alleges that DiBerardino assaulted him twice: first on January 20, 2009 and again on January 22, 2009. Cambron claims that both incidents occurred at work. (Id. at ¶¶ 6-9.)

Cambron states that he reported the assaults to the Manager of Starwood's Human Resources Department, Rosella Guardisone, on

February 2, 2009. Cambron claims that, per Guardisone's request, he e-mailed her an account of the incidents the next day. (<u>Id.</u> at ¶ 10.)

According to Cambron, he sought medical help at Doctors on Call, first on February 2, 2009 and again on February 18, 2012. According to Plaintiff, on his second visit the Doctor told him to remain off work and to file a workers' compensation claim. (<u>Id.</u> at ¶¶ 12-13.)

Cambron alleges that the Doctor unlawfully tampered with his medical records. (<u>Id.</u> at ¶ 13.) The Amended Complaint does not allege how the Doctor's purported misconduct is connected to the claims against Starwood.

Cambron states that, around February 26, 2009, he hired an attorney to bring suit against DiBerardino and Starwood for assault and battery and wrongful termination. He claims that his attorney drafted a letter for him to send to Starwood. The letter allegedly stated that requiring Cambron to work with DiBerardino would create a hostile work environment and that the issue needed to be resolved for Cambron to return to work. (<u>Id.</u> at ¶ 15.) It is unclear if Cambron ever delivered the letter.

On March 11, 2009, Cambron met with the Jay C. Carpenter, Director of Starwood's Human Resources Department, and Guardisone, to discuss his employment options. Cambron claims he was informed that DiBerardino was going to remain in his same position.

According to Cambron, he was told that if he was uncomfortable working for DiBerardino, he could resign, or they could potentially arrange a severance agreement. The parties determined that the Starwood Human Resources Department would prepare a Severance Agreement. (<u>Id.</u> at ¶ 17.)

On March 16, Carpenter, the Human Resources Director, mailed Cambron the Severance Agreement. (<u>Id.</u> at 18.)

On the same day, Cambron filed charges for assault and battery against DiBerardino in Hawaii State Court. Cambron claims that, against his wishes, Defendant Starwood Vacation Ownership, Inc. was not named as a co-defendant. (<u>Id.</u> at ¶ 19.)

On March 31, 2009, Human Resources Director Carpenter e-mailed Cambron asking if he intended to accept the Severance Agreement. The e-mail explained that the severance offer included a release of all claims against Starwood and DiBerardino. It also explained that the severance offer would expire on April 6, 2009. The e-mail indicated that if Cambron did not accept the severance offer, he was expected to return to work on April 7, 2009. (<u>Id.</u> at ¶ 20.)

Cambron claims that around April 3, 2009, his attorney composed a Letter of Resignation, stating that Cambron was quitting his position. Cambron says he was told to deliver the Letter by the April 6, 2009 Starwood deadline. According to Cambron, he chose not to deliver the Letter because he had a doctor's note excusing him from work. (<u>Id.</u> at ¶ 23.)

It is Cambron's position that Carpenter was aware that Cambron was too injured to work. (Id. at ¶ 22.)

On April 8, 2009, Cambron claims he received another e-mail from Human Resources Director Carpenter, stating that if Cambron did not return to work or communicate about his employment by April 10, 2009, his termination would be considered a voluntary separation for job abandonment. (Id. at ¶ 24.)

Cambron represents that, on April 11, 2009, one day after the Severance Agreement expired, he delivered the Letter of Resignation, unsigned. (Id. at ¶ 25.)

Cambron was terminated on April 10, 2009.[1] (Id. at ¶ 26.)

Cambron alleges the following causes of action: (1) Wrongful Termination in Violation of Public Policy; (2) Violation of the Hawaii Whistleblowers' Protection Act, Haw. Rev. Stat. § 378-62; and (3) Fraud and Conspiracy to Defraud. (Id. at pgs. 11-15.)

Defendant Starwood Vacation Ownership, Inc. moves to dismiss the Amended Complaint for failure to state a claim.


## STANDARD OF REVIEW


Federal Rule of Civil Procedure 12(b)(6) allows dismissal where a complaint fails "to state a claim upon which relief can be

---

[1]   Cambron points out that the documents regarding his COBRA coverage show that he was terminated on April 9, 2009. (Am. Compl. at ¶ 26.) The discrepancy is not material.

7

granted." The complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. Rule 8(a)(2).

When considering a Rule 12(b)(6) motion to dismiss, the Court must presume all allegations of material fact to be true and draw all reasonable inferences in favor of the non-moving party. <u>Pareto v. F.D.I.C.</u>, 139 F.3d 696, 699 (9th Cir. 1998). Conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss. <u>Id.</u> The Court need not accept as true allegations that contradict matters properly subject to judicial notice or allegations contradicting the exhibits attached to the complaint. <u>Sprewell v. Golden State Warriors</u>, 266 F.3d 979, 988 (9th Cir. 2001).

In <u>Bell Atlantic Corporation v. Twombly</u> the Supreme Court stated that Rule 8 of the Federal Rules of Civil Procedure "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action," and that "[f]actual allegations must be enough to raise a right to relief above the speculative level." 550 U.S. 544, 555 (2007).

In <u>Ashcroft v. Iqbal</u> the Supreme Court clarified that the principles announced in <u>Twombly</u> are applicable in all civil cases. 556 U.S. 662 (2009). The Court stated that "the pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-

harmed-me-accusation." <u>Id.</u> at 678 (quoting <u>Twombly</u>, 550 U.S. at 555). A complaint survives a motion to dismiss when it contains sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face. <u>Id.</u> (quoting <u>Twombly</u>, 550 U.S. at 570).

A claim is facially plausible when the factual content of the complaint allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. <u>Iqbal</u>, 556 U.S. at 678. The plausibility standard does not require probability, but it requires "more than a sheer possibility that a defendant has acted unlawfully." <u>Id.</u> (quoting <u>Twombly</u>, 550 U.S. at 556). A complaint that pleads facts that are "merely consistent with" a defendant's liability "stops short of the line between possibility and plausibility of 'entitlement to relief.'" <u>Id.</u> (quoting <u>Twombly</u>, 550 U.S. at 557).

## <u>ANALYSIS</u>

Plaintiff Kenneth W. Cambron alleges three causes of action against his former employer, Defendant Starwood Vacation Ownership, Inc: (1) Wrongful Termination in Violation of Public Policy; (2) violation of Hawaii's Whistleblowers' Protection Act; and (3) fraud and conspiracy to defraud. (Am. Compl. at pgs. 11-15, ECF No. 66.)

Defendant Starwood Vacation Ownership, Inc. moves to dismiss the action for failure to state a claim. (ECF No. 69.)

## I.   WRONGFUL TERMINATION IN VIOLATION OF PUBLIC POLICY CLAIM

### A.   *Parnar v. Americana Hotels, Inc.*: Wrongful Termination in Violation of Public Policy Under Hawaii Law

Hawaii common law provides a cause of action for at-will employees who are wrongfully discharged in violation of a "clear mandate of public policy." Parnar v. Americana Hotels, Inc., 652 P.2d 625, 631 (1982). Such claims for wrongful termination in violation of public policy are often called "Parnar claims" because the Hawaii Supreme Court first recognized the cause of action in Parnar v. Americana Hotels, Inc., 652 P.2d 625 (1982). An employee's termination raises a colorable Parnar claim when the employer's conduct conflicts with the text or purpose of a constitutional, statutory, or regulatory provision or scheme. Id.

The Ninth Circuit Court of Appeals interpreted Hawaii's jurisprudence for a wrongful termination claim under Parnar in Villarimo v. Aloha Island Air, Inc., 281 F.3d 1054 (9th Cir. 2002). The Villarimo case was an appeal from a grant of summary judgment of a Hawaii wrongful termination claim in violation of public policy. The Court of Appeals held that there are three requirements for bringing an actionable Parnar claim for wrongful termination in violation of public policy. First, the employee's discharge must

10

violate a clear mandate of public policy. Second, the cause of action is limited to certain protected activities. Such activities include refusing to commit an unlawful act, performing an important public obligation, or exercising a statutory right or privilege. Third, there must be evidence of a causal connection between the termination and the protected action. Id. at 1067 (citing various Hawaii Supreme Court cases).

Parnar claims are generally not recognized as separate claims when they are based on a public policy created by a statute with its own remedy. Ross v. Stouffer Hotel Co., 879 P.2d 1037, 1047 (1994); Griffin v. JTSI, Inc., 654 F. Supp. 2d 1122, 1140-41 (D. Haw. 2008). In the absence of a clear expression of legislative intent to the contrary, the existence of a statutory remedy bars the Parnar claim. Takaki v. Allied Machinery Corp., 951 P.2d 507, 514 (Haw. 1998).

**B.   Plaintiff's Claim for Wrongful Termination**

Cambron's wrongful termination claim in his Amended Complaint provides the following points as the basis of his claim:

1.   Defendant offered him a Severance Agreement.

2.   Defendant specified that acceptance of the Severance Agreement required Cambron to release Starwood and DiBerardino from all liability.

3.   Defendant terminated Cambron on April 9, 2009 for job abandonment while Cambron was on medical leave, with a doctor's approval.

11

> 4.   The wrongful termination caused Cambron and his family to suffer various damages.

(Am. Compl., First Cause of Action at pg. 11, ECF No. 66.)

Plaintiff alleges that his termination gives rise to a _Parnar_ claim, because he was assaulted at work by DiBerardino, resulting in him being unable to work.


### C.   Plaintiff Fails to State a Claim for Wrongful Termination

The allegations of the Amended Complaint are insufficient to support a _Parnar_ wrongful discharge claim.

A _Parnar_ wrongful discharge claim, by definition, requires the termination of the employee by the employer. _Villarimo_, 281 F.3d at 1067. Voluntary abandonment cannot support a claim for wrongful termination in violation of public policy. _Guitron v. Wells Fargo Bank, N.A._, No. C-10-3461-CW, 2012 WL 2708517, at *23 (N.D. Cal. July 6, 2012); _Busiere v. Providence Health Sys.-Oregon_, No. 05-630-PK, 2006 WL 3827460, at *15. (D. Or. Dec. 22, 2006).

In _Guitron_, No. C-10-3461-CW, 2012 WL 2708517, a plaintiff alleged that she was terminated in violation of California common law, which shares the same relevant requirements as a _Parnar_ claim. The plaintiff alleged that she was fired when she was told to turn over her keys and the employer had her escorted off the premises. Subsequently, the employer informed the plaintiff, via an e-mail and a letter, that she had been placed on administrative leave and

remained an employee of the company. Id. at *4. The letter from the employer warned the plaintiff that she would be deemed to have voluntarily resigned if she failed to attend a meeting that had been arranged to discuss her return to work. The plaintiff e-mailed the employer that she would not be returning to work because she had already been terminated. Id. at *5. The court dismissed the wrongful termination claim, because the facts showed that the plaintiff abandoned her job. Id. at *23. A wrongful discharge claim must be predicated on an actual discharge, not abandonment. Id.; see also White v. State, 929 P.2d 396, 408 (Wash. 1997).

Cambron's allegations, taken as true, show that he abandoned his job.  Cambron did not appear at work after the end of January 2009. On March 16, 2009, Starwood offered Cambron the choice of employment or a Severance Agreement. The severance offer expired on April 6, 2009. The Starwood Human Resources Director, Jay Carpenter, e-mailed Cambron twice, having failed to hear from Cambron about his intentions with respect to his employment. On March 31, 2009, Carpenter e-mailed Cambron to remind him of the April 6, 2009 expiration date for the severance offer. The e-mail also stated that Cambron was expected to return to work by April 7, 2009, if he did not accept the severance offer by its expiration date. Cambron did not respond in any manner.

On April 8, 2009, Carpenter informed Cambron that his termination would be processed as a voluntary separation for job abandonment if he did not communicate with Starwood, or return to

13

work by April 10, 2009. Cambron did not respond by that time. Cambron's failure to respond in any manner constituted job abandonment. Job abandonment does not support a <u>Parnar</u> claim.

Cambron's <u>Parnar</u> wrongful discharge claim also fails to allege a causal connection between Cambron's alleged termination and a protected activity. <u>See</u> <u>Villarimo</u>, 281 F.3d at 1067-68. In <u>Villarimo</u>, two plaintiffs brought <u>Parnar</u> claims against their former employer, alleging that they were terminated in retaliation for making complaints about the employer. The Ninth Circuit Court of Appeals upheld the grant of summary judgment denying the <u>Parnar</u> claims. The evidence showed that the plaintiffs were actually terminated for misconduct, and not in retaliation for making complaints.

Cambron's unwillingness to accept the Severance Agreement because it released DiBerardino and Starwood from liability did not cause his termination. Cambron's Amended Complaint states that Starwood specifically offered him an opportunity to return to work. Cambron's termination was caused by his failure to return to work, or otherwise communicate with Starwood about his intentions with respect to the Severance Agreement or his continued employment at Starwood.

**D.   Plaintiff's Wrongful Termination Claim Cannot Be Based on His Claim of Inability to Work Due to His Injury**

Plaintiff alleges that his termination violated public policy because he was unable to work due to the injuries he sustained from DiBerardino's assault.

The Hawaii Supreme Court held in <u>Takaki</u>, 951 P.2d at 513-14, that a <u>Parnar</u> claim for wrongful discharge in violation of public policy may not be based on work-injury related discharges. <u>Parnar</u> claims can only be maintained in a "narrow class of cases" where the judicially created wrongful discharge action is needed to effectuate the public policy at stake. <u>Ross v. Stouffer Hotel Co.</u>, 879 P.2d 1037, 1047 (1994). If a statutory or regulatory provision evidencing a public policy provides a remedy for the wrongful discharge, "provision of a further remedy under the public policy exception is unnecessary." <u>Id.</u>

The public policy against terminating an employee because of a work injury is evidenced in Haw. Rev. Stat. § 378-32. The statute provides:

> It shall be unlawful for any employer to suspend, discharge, or discriminate against any of the employer's employees . . . [s]olely because the employee has suffered a work injury which arose out of and in the course of the employee's employment with the employer and which is compensable under chapter 386 unless the employee is no longer capable of performing the employee's work as a result of the work

15

> injury and the employer has no other available work which the employee is capable of performing.

Haw. Rev. Stat. § 378-32(a)(2).

The remedy for a wrongful discharge due to a work injury is found in Haw. Rev. Stat. § 378-35, which provides for a hearing before the Hawaii Department of Labor and Industrial Relations to determine the appropriate remedy. In <u>Takaki</u>, the Hawaii Supreme Court held that the remedy in Haw. Rev. Stat. § 378-35 was the exclusive remedy available for termination for a work-related injury. <u>Takaki</u>, 951 P.2d at 513-14.

Defendant's Motion to Dismiss, as to the wrongful discharge in violation of public policy claim (Count I), is **GRANTED.**

## II.  HAWAII WHISTLEBLOWERS' PROTECTION ACT CLAIM

Cambron brings a claim against Starwood, pursuant to Hawaii's Whistleblowers' Protection Act, Haw. Rev. Stat. § 378-62. Cambron claims that Starwood retaliated against him for: (1) threatening to report Starwood to the Department of Commerce and Consumer Affairs for including false information in its promotional materials in April 2007 and (2) accusing DiBerardino of improper business practices in November 2008. (Am. Compl. at pgs. 12-14, ECF No. 66.)

16

**A.   Hawaii's Whistleblowers' Protection Act**

Hawaii's Whistleblowers' Protection Act ("Whistleblowers' Act")
prohibits an employer for retaliating against an employee who
engages in certain protected activities. The Whistleblowers' Act
provides:

> An employer shall not discharge, threaten, or
> otherwise discriminate against an employee
> regarding the employee's compensation, terms,
> conditions, location, or privileges of
> employment because:
>
> (1) The employee, or a person acting on behalf
> of the employee, reports or is about to report
> to the employer, or reports or is about to
> report to a public body, verbally or in
> writing, a violation or a suspected violation of:
>
> (A) A law, rule, ordinance, or regulation,
> adopted pursuant to law of this State, a
> political subdivision of this State, or the
> United States . . .
>
> unless the employee knows that the report is
> false.

Haw. Rev. Stat. § 378-62.

To establish a prima facie case for retaliation under the
Whistleblowers' Act, the plaintiff must prove that (1) he engaged in
a protected activity, (2) he was subjected to an adverse employment
action, and (3) the adverse employment action resulted because of
the participation in the protected activity. See Griffin v. JTSI,
Inc., 654 F.Supp.2d 1122, 1130-32 (D. Haw. 2008)(citing Crosby v.
State Dep't of Budget & Fin., 876 P.2d 1300, 1310 (Haw. 1994)).

17

The term "adverse action" is construed liberally to include various forms of retaliation, not only termination of employment. See Crosby, 876 P.2d at 1309-10. The employee must show that his or her protected activity was the "substantial or motivating factor" for the adverse action. Griffin, 654 F.Supp.2d at 1131-32. A court may infer a causal connection between a protected activity and a retaliatory action when there is proximity in time between the two. Id.

**B.   Cambron Fails to Identify an Adverse Employment Action**

A plaintiff bringing a Whistleblowers' Act claim must show an adverse employment action that affected his or her "compensation, terms, conditions, location, or privileges of employment." Crosby, 876 P.2d at 1309-10. An adverse employment action is generally one that affects pay or status. Black v. Correa, No. 07-00299-DAE-LEK, 2008 WL 3845230, at *11-12 (D.Haw. Aug. 18, 2008)(applying Title VII jurisprudence to a Hawaii Whistleblowers' Act claim).

Starwood did not terminate Cambron. Cambron, as discussed above, abandoned his employment by failing to return to work or communicate with Starwood about his intentions regarding his employment. There was not a termination of Plaintiff's employment at Starwood so it cannot be construed as an adverse employment action.

Cambron's statements in the Amended Complaint make it difficult to discern any adverse employment action that Cambron believes can

18

support his Whistleblowers' Act claim. The difficulty is due, at least in part, to internal inconsistencies[2] and fragmented sentences in the Amended Complaint. It is clear, however, that Cambron claims to have learned about adverse employment actions against him in June 2009, approximately three months after he had abandoned his employment at Starwood. (Am. Compl., 2d Cause of Action at ¶ 4, ECF No. 66.)

It appears that Cambron believes that a notation from June 2007 in his Starwood Human Resources file constitutes an adverse employment action. There is no indication that Cambron's employment was adversely impacted by the notation. It only became known to Cambron after he abandoned his employment. The notation is not an adverse employment action that can support Plaintiff's Whistleblowers' Act claim. A claim alleging that the June 2007 notations constituted retaliation would also run afoul of the two-year statute of limitations for Whistleblowers' Act claims. <u>Lopes v. Kapiolani Med. Ctr. for Women & Children</u>, 410 F. Supp. 2d 939, 952 (D. Haw. 2005). The statute of limitations, which runs from the date of the adverse action, would have expired before the filing of this action. <u>Id.</u>

Cambron also alleges that Starwood made efforts to "cover up" the assault by DiBerardino. (Am. Compl. at pg 14, ECF No. 66.) The

---

[2]     One paragraph of the Amended Complaint inconsistently states that an incident occurred on April 27, 2009. (Am. Compl., 2d Cause of Action at ¶ 4.) The surrounding events purportedly occurred in 2007.

allegation lacks specificity and is not an adverse employment action under the Whistleblowers' Act. It does not allege an adverse impact on a term or condition of Cambron's employment. <u>Crosby</u>, 876 P.2d at 1309-10.

Cambron's failure to identify an adverse employment action bars his Whistleblowers' Act claim.

**B.   Cambron's Purportedly Protected Activities Are Attenuated from the Allegations in the Amended Complaint About Improper Actions by Starwood**

Cambron's Whistleblowers' Act claim also fails because Cambron's actions, which allegedly caused retaliation by Starwood, are attenuated from the claimed retaliation in the Amended Complaint about Starwood.

A plaintiff bringing a Whistleblowers' Act claim must show that his or her protected activity was the "substantial or motivating factor" for the employer's challenged action. <u>Griffin</u>, 654 F.Supp.2d at 1131-32.

Cambron's April 2007 threat to report Starwood's use of false promotional material is distant in time from the claims at issue, which occurred in 2009. There is no causal connection between the alleged April 2007 conflict between Starwood and Plaintiff and his the action before the Court. <u>See</u> <u>Griffin</u>, 654 F.Supp.2d at 1131-32 (temporal proximity may be used to determine if a causal connection exists).

The November 2008 conflict, in which Cambron accused DiBerardino of improper business practices, is closer in time to the claims at issue. (Am. Compl. at pgs. 13-14, ECF No. 66.) It is, however, similarly attenuated from Starwood's actions that are before the Court. Cambron claims he received a congratulatory letter for being a "Top Team Manager" two days after the conflict with DiBerardino. Such commendation undermines the suggestion that an adverse employment action was taken in response to the conflict. It is possible a causal connection could exist between the November 2008 conflict and the January 2009 assault by DiBerardino. The assault, however, is not an adverse employment actions protected by the Whistleblowers' Act. See Black, 2008 WL 3845230, at *11-12 (an adverse employment action is one that affects pay, status, or otherwise impacts the terms or conditions of employment).

Defendant's Motion to Dismiss, as to the Whistleblowers' Act claim (Count II), is **GRANTED.**


## III. FRAUD AND CONSPIRACY CLAIM


Plaintiff appears to be attempting to allege two theories of fraud by Starwood. The fraud claims were not present in the original Complaint. Cambron claims Starwood "created fraudulent documents" and omitted damaging evidence in an April 28, 2011 Workers'

21

Compensation proceeding before the Hawaii Department of Labor and Industrial Relations.

**A.    The Workers' Compensation Statute Bars Plaintiff's Fraud and Conspiracy to Defraud Claims with Respect to His Application for Workers' Compensation Benefits**

The Court lacks jurisdiction to hear Plaintiff's attempted articulation of a fraud claim that relates to the workers' compensation hearing before the Hawaii Department of Labor and Industrial Relations. The Hawaii Workers' Compensation Law provides a cause of action and remedy for fraudulent "acts or omissions committed by any person who intentionally or knowingly acts or omits to act so as to . . . deny benefits." Haw. Rev. Stat. § 386-98(a). Such activity includes presenting false information on an application, making a false claim for denial of a health benefit, misrepresenting a material fact, falsifying or concealing a document, or making false statement to discourage an injured employee from claiming benefits or pursuing a workers' compensation claim. Id.

The exclusive civil remedy for such a violation is filing a complaint with the director of the Hawaii Department of Labor and Industrial Relations. Haw. Rev. Stat. § 386-98(f). The director of the Hawaii Department of Labor and Industrial Relations has original jurisdiction over the claim, with appellate jurisdiction granted to

the director of the appellate board, and then the Hawaii Supreme
Court. Haw. Rev. Stat. §§ 386-73, 386-77 and 386-88.

The Court lacks jurisdiction over Plaintiff's fraud claims
regarding his application for workers' compensation.

**B.  Plaintiff's Second Fraud Allegation is that Starwood Acted
Wrongfully in the State Court Action Brought By Cambron
Against DiBerardino**

Cambron appears to be raising a claim for fraud in connection
with an assault and battery suit that he filed against DiBerardino
in the Hawaii State Court, Second Judicial Circuit (Cv. No. 09-1-
0206) in March 2009. On December 27, 2012, the State Court granted
DiBerardino's motion to enforce a settlement agreement ending the
case. Judgment was entered on February 12, 2013.

A cause of action for fraud requires a showing that: (1) false
representations were made by a defendant, (2) with knowledge of
their falsity, (3) in contemplation of a plaintiff's reliance upon
the false representations, and (4) actual reliance by the plaintiff.
Shoppe v. Gucci Am., Inc., 14 P.3d 1049, 1067 (Haw. 2000). The
allegedly false representation must relate to a past or existing
*material* fact. TSA Int'l Ltd. v. Shimizu Corp., 990 P.2d 713, 725
(Haw. 1999)(emphasis added). A plaintiff suing in fraud must show
that he or she suffered a definite and ascertainable pecuniary loss.
Exotics Hawaii-Kona, Inc. v. E.I. Du Pont De Nemours & Co., 172 P.3d
1021, 1036 (Haw. 2007).

23

Cambron claims that Starwood failed to introduce various pieces of evidence and created fraudulent documents in connection with a deposition of a member of the Starwood Human Resources Department in the State Court assault case. (Am. Compl., Factual Allegations at ¶¶ 28-29, ECF No. 66.) The lack of particularity of his fraud claim extends to who was deposed, what was said, and the effects of the alleged misrepresentations. Cambron generally claims that the alleged fraudulence somehow impacted his assault suit against DiBerardino in State Court.

The Amended Complaint does not contain a fraud claim stated with particularity as required by Rule 9(b) of the Federal Rules of Civil Procedure.

Defendant's Motion to Dismiss, as to the Fraud and Conspiracy Claim (Count III), is **GRANTED.**


## IV.  DISMISSAL WITH PREJUDICE OF ALL CLAIMS


### A.   Dismissal with Prejudice

Pursuant to Federal Rule of Civil Procedure 15(a), a court should grant leave to amend a complaint "unless amendment would cause prejudice to the opposing party, is sought in bad faith, is futile, or creates undue delay." Johnson v. Mammoth Recreations, Inc., 975 F.2d 604, 607 (9th Cir. 1992). The liberal amendment policy provided in Rule 15(a) is based on the intended purpose of

the Rule: facilitating decisions on the merits instead of on technicalities or pleadings. <u>In re Morris</u>, 383 F.3d 891, 894 (9th Cir. 2004). Dismissal with prejudice is appropriate only when the complaint cannot be saved by amendment. <u>Eminence Capital, LLC v. Aspeon, Inc.</u>, 316 F.3d 1048, 1052 (9th Cir. 2003).

Cambron filed the Complaint in this action on October 25, 2010 in State Court. Cambron attempted to file an Amended Complaint in State Court on June 2, 2011, but the case had already been removed to Federal Court. (ECF No. 62.) At the scheduling conference on July 14, 2011, the Magistrate Judge informed Cambron that the Amended Complaint was not part of the federal record and he would need to request leave to amend the Complaint in Federal Court. The Rule 16 Scheduling Order established a December 16, 2011 deadline for amending pleadings. Plaintiff did not move to amend the Complaint until almost ten months later on October 5, 2012, in his Opposition to Defendant's Motion for Judgment on the Pleadings. (ECF No. 57.)

In recognition of Plaintiff's pro se status, on November 29, 2012, the Court granted Cambron leave to file an Amended Complaint, despite the extreme delay. (ECF No. 63.)

The Amended Complaint, similar to the initial Complaint, fails to allege a viable claim. Allowing further amendment would be futile.

The causes of action against Defendant Starwood Vacation Ownership, Inc. are **DISMISSED WITH PREJUDICE.**

**B.   Dismissal of Claims Against Starwood Hotels Worldwide, Inc.**

The Amended Complaint (ECF No. 66), filed on January 25, 2013, added Starwood Hotels Worldwide, Inc. as a Defendant in the action. There has been no filing indicating that Starwood Hotels Worldwide, Inc. has been served.

Starwood Hotels Worldwide, Inc. has not appeared. They are the parent company for Defendant Starwood Vacation Ownership, Inc, the moving party on the Motion before the Court.

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a court may dismiss an action with prejudice as to a party who has not been served, answered, or appeared, if that party is similarly situated to the party moving to dismiss the action. Abagnin v. AMVAC Chemical Corp., 545 F.3d 733, 742-43 (9th Cir. 2008). The dismissal may be made without giving the plaintiff notice or an opportunity to respond if a plaintiff "cannot possibly win relief." See Sparling v. Hoffman Construction Co., 864 F.2d 635, 638 (9th Cir. 1981); Omar v. Sea-Land Serv., Inc., 813 F.2d 986, 991 (9th Cir. 1987).

The Amended Complaint does not mention a specific theory for bringing suit against Starwood Hotels Worldwide, Inc. It appears that the action against Starwood Hotels Worldwide, Inc. is based on a theory of liability for the claims against Starwood Vacation Ownership, Inc. as a parent of Starwood Hotels Worldwide, Inc. Plaintiff "cannot possibly win relief" against Starwood Hotels

26

Worldwide, Inc. for the reasons set forth for dismissal of the claims against its subsidiary, Starwood Vacation Ownership, Inc.

The causes of action against Defendants Starwood Vacation Ownership, Inc. and Starwood Hotels Worldwide, Inc. are **DISMISSED WITH PREJUDICE.**

## CONCLUSION

Defendant's Motion to Dismiss (ECF No. 69) is **GRANTED.** The Amended Complaint (ECF No. 66) is **DISMISSED WITH PREJUDICE.**

The Clerk of the Court is ordered to close the case.

Dated:    May 09, 2013, Honolulu, Hawaii.



                                    /S/ Helen Gillmor
_____
Helen Gillmor
United States District Judge

Kenneth W. Cambron v. Starwood Vacation Ownership, Inc. and Starwood
Hotels Worldwide, Inc.; Civil No. 11-00326 HG-KSC; **ORDER GRANTING**

27

**DEFENDANT STARWOOD VACATION OWNERSHIP INC.'S MOTION TO DISMISS THE AMENDED COMPLAINT FILED JANUARY 25, 2013 (DOC. 69).**